700 So.2d 1046 (1997)
STATE of Louisiana, Appellee,
v.
Vernon B. BRADFORD, Appellant.
No. 29654-KA.
Court of Appeal of Louisiana, Second Circuit.
September 24, 1997.
*1047 Betty L. Marak, Daryl Gold, Shreveport, for Appellant.
Richard Ieyoub, Attorney General, Paul Carmouche, District Attorney, Ross S. Owen, Assistant District Attorney, for Appellee.
Before BROWN, STEWART and CARAWAY, JJ.
BROWN, Judge.
Defendant, Vernon Bradford, questions the sufficiency of the incriminating evidence that resulted in his conviction of vehicular homicide. Following the jury verdict the trial court sentenced defendant to the maximum term of 15 years at hard labor. On appeal, this court noted that a motion to reconsider the sentence had not been acted upon and ordered the trial court to rule upon the motion and supplement the appellate record. The trial court granted the motion, then inexplicably denied the state's request to present evidence and reduced the sentence to seven years at hard labor. Defendant's presence was waived at this new "sentencing" proceeding. We affirm defendant's conviction, but set aside the resentencing and remand.

Facts
On the night of March 2, 1995, around 10:30 p.m., defendant, Vernon Bradford, was involved in a head-on collision with Edwin Beard, Jr., on La. Hwy. 1 north of Oil City. It was a rainy night and the road was slick. Caddo Parish sheriff's deputy Steven Joe, the first to arrive on the scene, found both Beard and the puppy riding with him dead. Defendant, who was pinned inside his truck but alive, told Deputy Joe that he did not know what happened.
Deputy Joe detected a strong smell of alcohol on defendant. The deputy testified that defendant's speech was slurred and incoherent. Furthermore, defendant admitted that he had consumed six beers between 3:30 and 10:30 p.m. Defendant was taken to Willis-Knighton North for medical treatment. At the hospital defendant was read his Miranda rights. Deputy Joe, believing defendant to be intoxicated, had Sheila Wright, Caddo Parish sheriff's office nurse, withdraw defendant's blood for a blood alcohol test. Defendant's blood reflected .16 grams percent alcohol, which exceeded the legal level of intoxication.
Deputy Joe testified that defendant's pick-up truck was headed north on Hwy. 1 and Beard's pick-up truck was southbound at the time of the collision. The collision spun defendant's northbound vehicle around to face southbound, leaving scuff marks and tire gouges in the dirt.
Beard, who was 21 years old, suffered crushing injuries and died from blood loss. There was no evidence of alcohol or other drugs in Beard's system. Ray Herd, assistant director of the North Louisiana Crime Lab, testified as an expert witness in accident reconstruction. Mr. Herd opined that the accident was caused by defendant's truck swerving into Beard's lane of travel.
The defense presented two witnesses. Defendant's brother testified that he split a 12 pack of beer with defendant, who then drove him home. The accident scene was approximately 25 minutes away from the witness's home. Professor Jack Humpheries, testifying as an accident reconstruction expert for the defense, stated that he was unable to determine how the accident occurred.

*1048 Discussion

Sufficiency of the evidence
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. La.C.Cr.P. art. 821; State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir. 1992), writ denied, 605 So.2d 1089 (La.1992).
This court's authority to review questions of fact in a criminal case is limited to the sufficiency of the evidence evaluation under Jackson v. Virginia and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 5(C); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir.1986), writ denied, 499 So.2d 83 (La.1987).
To be guilty of vehicular homicide, a defendant must operate a vehicle while his blood/alcohol concentration is .08 percent or more. In addition, there must be a causal connection between the impaired driving and the death. La. R.S. 14:32.1; State v. Taylor, 463 So.2d 1274 (La.1985).
Defendant argues that the evidence did not prove beyond a reasonable doubt that his impaired driving caused the accident and Beard's death. He proposes that Beard crossed the center line and struck his vehicle.
Deputy Steven Joe testified that he discovered scuff marks in Beard's lane of travel (southbound). These scuff marks were discovered by Deputy Joe in the northbound and southbound lanes. Deputy Joe, using the location of the various scuff marks, explained the chain of events as defendant veering into the path of Beard's truck, colliding, and being spun around. Deputy Joe testified that defendant smelled strongly of alcoholic beverages and was barely coherent. The officer firmly believed defendant to be intoxicated. Defendant told Deputy Joe that he did not know what had happened. The deputy's suspicions of defendant's inability to operate his truck were confirmed when defendant's blood level tested .16 grams alcohol.
The state also presented the testimony of Ray Herd, an accident reconstruction expert. Herd estimated that the victim's truck was traveling at a speed of between 50-55 m.p.h. and that defendant was going 15-25 m.p.h. The slower, improperly angled vehicle was defendant's because, as Herd testified, Beard's truck was traveling too fast at regular road speed to be turned to the angle which caused the head-on collision on the narrow, two-lane road at the time of impact. Herd further stated that a slow moving vehicle could swerve immediately into a 15 degree angle and cause a head-on collision with an oncoming car. The fact that defendant's truck spun around 180 further supports this conclusion.
Defendant's accident reconstruction expert, Dr. Jack Humpheries, estimated that the victim was traveling around 50 m.p.h. and that defendant was traveling a little faster than 20-25 m.p.h. Dr. Humpheries' testimony did little to dispute Herd's findings. Dr. Humpheries testified that he could not tell how or precisely where the accident occurred because of the absence of visible gouge marks in the pictures of the accident scene. Dr. Humpheries also noted that he only viewed one of the vehicles involved in the collision, defendant's truck.
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Braswell, 605 So.2d 702 (La.App. 2d Cir.1992); State v. Emerick, 499 So.2d 195 (La.App. 2d Cir.1986); State v. Garlepied, 454 So.2d 1147 (La.App. 4th Cir.1984), writ denied, 462 So.2d 189 (La.1984).
The testimony of Deputy Joe and Ray Herd, combined with proof of defendant's intoxication the night of the accident, provided the jury with evidence to support a reasonable conclusion that the alcohol impaired *1049 defendant swerved into the path of Beard's truck, causing his death.
These assignments of error are without merit.

Expert testimony concerning effects of alcohol
Defendant's discovery motion requested that the district attorney provide defendant with the results of "any ... scientific tests or experiments made in connection with or material to the particular case." On appeal, defendant asserts that the trial court erred in allowing Jimmy Barnhill's testimony based on lack of notice.
Jimmy Barnhill, who was accepted by the court as an expert in determining the effect of alcohol on the human body, performed no tests or examinations upon defendant. It was Barnhill's testimony that a person with a blood level of .10 grams percent alcohol would exhibit behavior manifesting obvious intoxication. He testified that even drinkers with a high alcohol tolerance who exhibit better motor skills are also sufficiently impaired at .10 to be unsafe drivers.
Over defense objection, the trial court allowed Barnhill to testify, noting that he was a local person on the list of subpoenaed witnesses, which gave defense counsel notice that he might testify. The court further noted that defense counsel would have the opportunity to effectively cross-examine the witness. Out of caution, the court delayed Barnhill's cross-examination to give defendant's attorney an extra night to prepare for and to find other experts to contradict the testimony of Barnhill.
The purpose of discovery is to afford defendant and his attorney the opportunity to prepare adequately for trial and to eliminate unwarranted prejudice which could arise from surprise testimony. State v. Trahan, 576 So.2d 1 (La.1990); State v. Toomer, 395 So.2d 1320 (La.1981). La.C.Cr.P. art. 719 requires the district attorney, upon motion, to provide the defense copies of reports of any scientific tests or experiments, made in connection with or material to the particular case, that are in the state's possession and are intended for use at trial. This statute is interpreted literally by courts to require discovery of scientific tests only when they are intended for use at trial, except exculpatory evidence must always be given to the defense even though not intended for use at trial. State v. Pool, 361 So.2d 1202 (La.1978).
In the instant case, no evidence of a particular scientific test was introduced during Barnhill's testimony. Instead, Barnhill simply testified that his years of studying the effect of alcohol on the human body were influenced by his desire to test the accuracy of the Widmark formula, which calculates the amount of alcohol in a person's blood through measurement of blood alcohol level, body weight and gender. Barnhill stated that he performed no tests involving defendant or defendant's blood.[1]
The transcript reveals that Barnhill merely explained to the jury the impact of blood alcohol levels on the human body. His observations from years as an expert, not the results of any particular test, formed the intent and scope of Barnhill's testimony.
Barnhill performed no tests or procedures upon defendant or his blood and referred to no specific test or procedure; the state merely sought to explain to the jury through Barnhill's testimony the effects of a blood alcohol level of .16. We further note that Dr. McCormick could have and has testified similarly even though such information was not contained in his report. See State v. Copes, 566 So.2d 652 (La.App. 2d Cir.1990). This assignment of error is meritless.

Limitation of voir dire
The scope of voir dire examination is within the sound discretion of the trial court. La.C.Cr.P. art. 786. Although the trial court is vested with discretion to limit the voir dire examination, it must afford sufficient latitude to counsel to fully explore relevant matters concerning prospective jurors. State v. Hall, 616 So.2d 664 (La.1993). In order to determine whether a trial court has in fact afforded such latitude to defendant *1050 in examining prospective jurors, a review of the trial court's rulings should be undertaken on the record of the voir dire examination as a whole. State v. Taylor, 93-2201 (La.02/28/96), 669 So.2d 364; State v. Williams, 457 So.2d 610 (La.1984); State v. Jackson, 358 So.2d 1263 (La.1978).
The record contradicts defense counsel's argument and does not reveal any basis for these assignments of error. Defense counsel asked a prospective juror whether she understood the vehicular homicide statute as read by the state's attorney. The potential juror, in response, asked defense counsel a question about the law's interpretation. The trial court interrupted at that point to inform the jurors that they are to ultimately listen to his instructions as to the law and not the interpretation of the law given by the prosecution or defense. The record further reveals that the trial court did not limit defendant's attorney from reviewing the law with the jury. These assignments have no merit.

Motion for acquittal and/or new trial
The new trial motion alleges that the testimony of Jimmy Barnhill and the limitations on voir dire were legal errors. As we have already discussed, there is no merit to these assertions. Further, defendant urges that under the new trial motion, the trial judge was obliged to weigh the evidence as a "thirteenth juror." La.C.Cr.P. art 858 does not allow an appellate review of the denial of a new trial motion except for error of law.
The motion for post-verdict of acquittal raises the sufficiency of the evidence under the Jackson v. Virginia standard. Having found the evidence sufficient, this motion is without merit.

Errors Patent
La.C.Cr.P. art 835 mandates that "[I]n felony cases the defendant shall always be present when sentence is pronounced.... If a sentence is improperly pronounced in the defendant's absence, he shall be resentenced when his presence is secured." Defendant's presence was not necessary for the ruling on the motion to reconsider; however, sentencing is a distinct matter governed by La. C.Cr.P. art. 835. Defendant's presence cannot be waived and the resentencing was invalid and must be set aside.
La. R.S. 14:32.1 provides that the offender shall be fined not less than $2,000, that at least one year of the sentence shall be imposed without benefit of probation, parole or suspension of sentence and that the court shall require the offender to participate in a court-approved substance abuse program or a court-approved driver improvement program or both. The transcript reveals that none of these mandatory conditions were imposed on defendant at resentencing.
After the motion to reconsider was granted, the state asked for time to present evidence concerning the sentence. This request was denied and the trial court immediately imposed a lesser sentence of seven years. The state requested reasons for the change in the sentence. The reasons given were inadequate. The state objected for the record. On remand, the trial court should consider the state's argument and give reasons for its final decision.[2]

Conclusion
For the reasons set forth above, defendant's conviction is AFFIRMED. The resentencing of defendant was invalid and is SET ASIDE. We REMAND for resentencing in accordance with this opinion.
NOTES
[1] Defendant's blood alcohol level of .16 was determined by Randall Robillard at the North Louisiana Crime Lab.
[2] We note that defendant was a third DWI offender and driving under a revoked license. In his written statement to the officer preparing the PSI, defendant concluded that he was convicted, not because of his guilt, but because the victim was a deputy sheriff's son and because of media prejudice.