# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 08-1531


**STATE OF LOUISIANA**

**VERSUS**

**TIMOTHY GLEN GRANGER**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 281,930
HONORABLE THOMAS MARTIN YEAGER, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***


**ELIZABETH A. PICKETT**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***


Court composed of Marc T. Amy, Elizabeth A. Pickett, and J. David Painter, Judges.

**CONVICTION AFFIRMED.  SENTENCE VACATED.  REMANDED WITH INSTRUCTIONS.**


**James C. Downs**
**District Attorney - 9th JDC**
**Thomas R. Willson**
**Assistant District Attorney**
**701 Murray Street**
**Alexandria, LA 71301**
**(318) 473-6650**
**Counsel for Plaintiff-Appellee**
**State of Louisiana**

**Henry H. Lemoine**
**Howell D. Jones, IV**
**Lemoine & Wampler**
**607 Main St.**
**Pineville, LA 71360**
**(318) 473-4220**
**Counsel for Defendant-Appellant**
**Timothy Glen Granger**

**PICKETT, Judge.**

The defendant, Timothy Glen Granger, was charged by bill of information filed on March 14, 2006, with obscenity, a violation of La.R.S. 14:106. The defendant entered a plea of not guilty on June 16, 2006.

A bench trial commenced on March 31, 2008, and the trial court found the defendant guilty of obscenity. A Motion for New Trial and a Motion for Judgment of Acquittal were filed on April 22, 2008. The motions were denied on June 30, 2008. The defendant was subsequently sentenced to serve three years at hard labor. The sentence was suspended and the defendant was placed on supervised probation for a period of three years. The trial court also ordered the defendant to pay a fine of $500 and court costs in the amount of $241.50. In default of payment, the defendant was to serve six months in the parish jail.

A Motion for Appeal was filed on July 3, 2008, and granted on July 8, 2008. When granting that motion, the trial court stayed the execution of sentence pending the outcome of this appeal. The defendant is now before this court asserting one assignment of error. Therein, the defendant contends the trial court declared witness Harold Granger to be credible, which creates a reasonable doubt as to his guilt.

## FACTS

The defendant was convicted of obscenity for masturbating in his vehicle while driving alongside a school bus on Hwy. 165 in Ball, Louisiana, on January 25, 2006, at approximately 8:19 a.m.

David Williams, the school bus driver, described the events that occurred while he was driving from Paradise Elementary to Ball Elementary as follows:

> I'm in the right hand lane, and I went to tap my breaks, and I looked down and the car; you know, at first I didn't, ah, it can't be what

1

I think it is, so I go on a little further and by the time I get to the light, it was still in the same position. So, I tapped my breaks again, and when I did, I looked back -- I looked down into the car, and the person driving the car trousers were unzipped and their hand was going up and down and they were leaning -- there's a -- I call it an imaginary line in a car, and they were leaning over the car like this (indicating) looking up at the bus with their hand going like this.

. . . .

In the passenger's side, and, uh, I thought, you know, I said, "nah," then I said, "Yes it is". So, I kept on going to the school. I was making sure that none of the kids [saw] anything that was going on because they {sic} teachers at school would have -- if anything happens on the bus and you don't know it, you're fired. . . . and I looked and nobody was paying attention because kids were playing, and I turned in to go to the school, but before I turned to go to the school, there's -- the car that was on the side of me, kind of like [ran] off the road. They were still doing their thing, looking at the bus, and running off the road right by, uh, Select -- just after you pass Select Motors, and when I turned to go down Camp Livingston Road, they turned at the median by a little pizza place and went around and came back, and I went on to the school and , uh, reported it to a safety officer. And from there I called, I called my boss on the radio first, and then I reported to the safety officer, and then I went to the police department.

Williams further testified that he saw the driver of the vehicle's "[p]ants unzipped, and his hand in his lap in an up and down motion." Williams also stated that the driver had his penis in his hand and that he had no question about that. However, in his statement to police, Williams did not specifically state that he saw the man's penis.

Williams wrote down the license plate number of the vehicle and turned it over to police. Police showed Williams several photographs and he identified the defendant as the driver of the car. He also made an in-court identification of the defendant. Williams testified there was no one else in the car at that time.

The defendant denied masturbating in his car. The defendant further testified that his father was in the car with him that day and that it was his father's birthday. He further testified that the two dropped his son off at school, and as he turned back

2

onto Highway 165, he spilled coffee in his lap. After he spilled the coffee, he turned at Ball Supermarket and drove back north to get deer feed that his father wanted at Robinson's Feed and Seed. Before getting to the feed store, the defendant turned around and drove back home because he could not go into the store because of his clothes.

The defendant asserted that he did not see a school bus that day. However, if Williams saw anything, it was him trying to clean his lap.

The defendant testified that his father never attempted to exonerate him, he chose not to get his father involved, and he requested that his father not say anything. Additionally, he did not tell police his father was with him because he had been taught to answer only the questions he was asked.

The defendant had previously entered a plea of nolo contendere to lewd and lascivious conduct with a juvenile in Florida and was placed on probation for two years. The defendant was asked if the Florida allegation involved his exposing his penis to a young female, and he asserted he was attempting to urinate.

Harold Ray Granger, the defendant's father, testified that he rode with the defendant to drop the defendant's son off at school on the date in question. Further, the defendant was always accompanied by Harold or his wife due to the allegations in Florida.

Harold testified that he sat in the back seat that morning. After the two dropped the defendant's son off at school, they proceeded in the direction of the store where Harold could buy deer feed. Harold testified that he and the defendant were headed toward Kingsville when the defendant spilled coffee in his lap. They turned around at the entrance to Ball Food Store. The two then got near Simms Crossing and

3

decided to go home. Harold testified that he never saw the defendant masturbate as they drove next to a school bus.

Harold testified that to get to his home, one would turn on Highway 1204. Select Motors was located at that intersection. Harold explained the route he and the defendant took to bring the defendant's son to school as follows:

> We came out on Highway 1204, and we turned left and went to Select Motors, and from Select Motors we crossed the highway and went left, uh, about one block and went to Ball Elementary School.

When they left the school, they turned left and got back on Highway 165 and drove south.

Harold further testified that the defendant spilled the coffee when they got back onto Highway 165 from leaving the school. Harold remembered the event because it occurred on his birthday. Harold asserted that no one ever asked if he was with the defendant on the date in question.

Laura Granger, the defendant's mother, testified that she saw a coffee spill on the defendant's pants on January 25, 2006.

After hearing from the witnesses, the trial court stated that he was "impressed" with the testimonies of both Williams and Harold Granger. The trial court then asked the following question:

> the bus driver said that he saw the defendant in between Paradise Elementary and Ball Elementary, and it appears to me it was kind of like in between Paradise and where the Ball Cutoff Road is. Not close to Ball Elementary, which he said was about a quarter of a mile from where Ball Cutoff intersects with 165. The defendant that day would have come down Ball Cutoff Road, taken a left, and run down here to Ball Elementary. Miss the -- the bus driver said he saw them between Paradise and here on this date in question. Uh, the defendant was not in this area from Paradise to Ball Cutoff Road.

4

The trial court further stated:

> So, if , if what everybody is saying -- what the defendant and his father are saying, that they would have come from Ball Cutoff Road, uh, made a left and gone down here on that day, that that bus driver couldn't have seen them that day.
>    . . . .
> But I find it hard to believe that he's imagining this. This is my problem.

The trial court then stated that Williams was able to identify both the defendant in court and a photograph of the car. It found that Williams was a "credible" witness, and it "had no problem with his testimony." The trial court then noted that Williams said that he saw the defendant's penis and that no one else was in the car. The trial court further stated that it had "no reason to doubt his testimony" and that it had "not been given any reason why I shouldn't believe him."

The trial court was not "impressed" with the defendant's testimony. However, it was "very impressed" with Harold's testimony. The trial court then stated that it thought Harold was confused about the date on which this event occurred. The trial court then said that if the defendant and Harold were taking the defendant's son to school they would not have been between Paradise and where Ball Cutoff Road would have been, which is where Williams said he saw the defendant. The trial court then ruled as follows: "So, based upon the evidence that I've heard, I believe that the State -- I'm firmly convinced of the truth of the charge, and that the State's proved beyond a reasonable doubt that Mr. Granger committed the offense of obscenity on January 25, 2006."

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by this court for errors patent on the face of the record. After reviewing the record, we find

5

there are two errors patent, one of which requires that the defendant's sentence be vacated and the case remanded for resentencing.

Louisiana Code of Criminal Procedure Article 835 requires a defendant to be present when sentence is pronounced.[1] In the present case, the defendant was not present at sentencing, but he waived his appearance by a written waiver signed by him.[2]

In *State v. Bradford*, 29,654 (La.App. 2 Cir. 9/24/97), 700 So.2d 1046, the second circuit held that a defendant's presence at sentencing, or, in that particular case, resentencing, cannot be waived. Finding the defendant's resentencing invalid, the court set it aside and remanded for resentencing. In *State v. Thomas*, 05-1051 (La.App. 3 Cir. 3/1/06), 924 So.2d 1146, *abrogated on other grounds by State v. Stevens*, 06-818 (La.App. 3 Cir. 1/31/07), 949 So.2d 597, defense counsel waived the defendant's presence at the hearing on his motion to reconsider sentence. This court acknowledged that although a defendant's presence is not required at a hearing on a

---

[1]Louisiana Code of Criminal Procedure Article 835 states:

> In felony cases the defendant shall always be present when sentence is pronounced. In misdemeanor cases the defendant shall be present when sentence is pronounced, unless excused by the court. If a sentence is improperly pronounced in the defendant's absence, he shall be resentenced when his presence is secured.

[2]The waiver stated, in pertinent part:

> There is presently a hearing scheduled for a Motion for Judgment of Acquittal, Motion for New Trial, and, alternatively, Sentencing scheduled for June 30, 2008.

> Because of my serious health condition, I wish to waive my appearance at the hearings that are scheduled for June 30, 2008, and allow my attorney of record, Henry H. Lemoine, Jr., to appear on my behalf, and accept the decisions of the court.

motion to reconsider sentence where the trial court simply rules on the motion, his presence is required where he is actually resentenced, as was the case in *Thomas*. Thus, this court recognized as error patent the defendant's absence from the hearing.

In the present case, the defendant's sentence is vacated and the case remanded for resentencing in his presence, as required by La.Code Crim.P. art. 835. *See Bradford*, 700 So.2d 1046, and *State v. Heim*, 03-957 (La.App. 4 Cir. 3/10/04), 870 So.2d 335, *writ denied*, 04-884 (La.10/1/04), 883 So.2d 1004.

Next, the record does not indicate that the trial court advised the defendant of the prescriptive period for filing an application for post-conviction relief as required by La.Code Crim.P. art. 930.8. Thus, the trial court is directed to inform the defendant of the provisions of article 930.8 at his resentencing.

## ASSIGNMENT OF ERROR

In his only assignment of error, the defendant contends that Harold's testimony, which was declared credible by the trial court, creates reasonable doubt as to his guilt.

> [T]he *Jackson* standard of review . . . permits an appellate court to impinge on the actual fact finder's discretion "only to the extent necessary to guarantee the fundamental protection of due process of law." *Jackson* [*v. Virginia*], 443 U.S. [307] at 319, 99 S.Ct. [2781] at 2789 [(1979)] (footnote omitted). Given this narrow compass, the *Jackson* standard neither permits a reviewing court to second guess the rational credibility determinations of the fact finder at trial, *State ex rel. Graffagnino v. King*, 436 So.2d 559, 563 (La.1983), nor requires a reviewing court to consider the rationality of the thought processes employed by a particular fact finder in reaching a verdict. *Jackson* observed in this regard: "The question whether the evidence is constitutionally sufficient is of course wholly unrelated to the question of how rationally the verdict was actually reached. Just as the [rational fact finder] standard . . . does not permit a court to make its own subjective determination of guilt or innocence, it does not require scrutiny of the reasoning process actually used by the factfinder-if known." *Jackson*, 443 U.S. at 319 n. 13, 99 S.Ct. at 2789.

7

*State v. Marshall*, 04-3139, pp. 5-6 (La. 11/29/06), 943 So.2d 362, 367, *cert. denied*, __ U.S. __, 128 S.Ct. 239 (2007).

The defendant was convicted of obscenity. Obscenity is the intentional "[e]xposure of the genitals, pubic hair, anus, vulva, or female breast nipples in any public place or place open to the public view, or in any prison or jail, with the intent of arousing sexual desire or which appeals to prurient interest or is patently offensive." La.R.S. 14:106. "Evidence that a defendant's genitals were exposed and that he was masturbating indicate that his actions were intended to arouse himself and is sufficient to support an obscenity conviction." *State v. Poche*, 05-1042, p. 5 (La.App. 3 Cir. 3/1/06), 924 So.2d 1225, 1230 (citations omitted).

In brief to this court, the defendant asserts that the trial court found Williams and Harold to be credible witnesses. He then asserts that "[t]he testimony of a credible witness, one declared by the Court as impressive and believable, which directly contradicts the veracity of the charge creates reasonable doubt and demands a finding of not guilty." The defendant further asserts that a rational trier of fact could easily and reasonably conclude that he was attempting to dry and clean his pants while driving. Further, this type of action, "consisting of repeated up and down hand gestures," could be mistaken as a type of lewd behavior.

The defendant asserts that he is not asking this court to reevaluate the testimony of the witnesses. The defendant further asserts that he accepts, as did the factfinder, that Williams and Harold were telling the truth. The defendant then asks this court to follow the two-part test set out in *Rosell v. ESCO*, 549 So.2d 840 (La.1989). The defendant cites *Stobart v. State Through Department of*

*Transportation and Development*, 617 So.2d 880, 882 (La.1993), which discusses

*Rosell*, 549 So.2d 840, as follows:

> A court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." *Rosell v. ESCO*, 549 So.2d 840 (La.1989). This court has announced a two-part test for the reversal of a factfinder's determinations:
>
> > 1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and
> >
> > 2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).
>
> *See Mart v. Hill*, 505 So.2d 1120, 1127 (La.1987).
>
> This test dictates that a reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court's finding. *Id*. The reviewing court must review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous.
>
> Nevertheless, the issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. *See generally*, *Cosse v. Allen-Bradley Co.*, 601 So.2d 1349, 1351 (La.1992); *Housley v. Cerise*, 579 So.2d 973 (La.1991); *Sistler v. Liberty Mutual Ins. Co.*, 558 So.2d 1106, 1112 (La.1990). Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. *Rosell v. ESCO*, 549 So.2d 840 (La.1989); *Arceneaux v. Domingue*, 365 So.2d 1330 (La.1978).

The defendant asserts that the trial court had no reasonable basis for finding him guilty when it believed two opposing testimonies. Additionally, if both Williams and Harold were believed, Harold's testimony should be given more weight, as he was inside the vehicle at the time of the incident. The defendant asserts that the trial

court was clearly wrong in giving more weight to Williams' testimony. Thus, it was clearly wrong in finding him guilty

The standard cited by the defendant is incorrect, as this is a criminal case and not a civil case. Accordingly, this court will not follow the analysis set out in *Rosell*, 549 So.2d 840.

The trial court did state that it was "impressed" with Harold's testimony. The trial court never specifically stated that it found Harold to be "credible." Furthermore, the trial court stated that Harold was confused about the date on which the incident occurred. Therefore, the trial court did not find that Williams and Harold were both truthful. The trial court made a credibility determination and chose to believe Williams' testimony. That determination should not be second-guessed by this court. Accordingly, the defendant's conviction is be affirmed.

## CONCLUSION

The defendant's conviction is affirmed. However, his sentence is vacated and the case remanded for resentencing in the defendant's presence. At resentencing, the trial court should inform the defendant of the prescriptive period for filing an application for post-conviction relief, as required by La.Code Crim.P. art. 930.8.

**CONVICTION AFFIRMED. SENTENCE VACATED. REMANDED WITH INSTRUCTIONS.**