STEWART, J.
 

 | ,The defendant, Addarrien Cottonham, appeals his adjudication as an habitual offender for which he was sentenced to 20 years at hard labor. Finding no error, we affirm.
 

 FACTS
 

 The defendant was originally charged by bill of information with possession of marijuana with intent to distribute, possession of cocaine with intent to distribute, and simple escape. Pursuant to an agreement, the defendant entered guilty pleas to the simple escape charge and to reduced charges of simple possession of marijuana and of cocaine. The defendant also agreed to a sentence of 20 years of hard labor as a fourth felony offender, and the state agreed not to prosecute the defendant on other pending charges. The defendant was sentenced in accordance with his agreement with the state.
 

 By writ grant on January 13, 2006, this court upon review of the defendant’s application for post-conviction relief found that he had not been fully advised of his rights during the habitual offender proceeding. Therefore, we vacated the habitual offend
 
 *322
 
 er plea and remanded the matter for new habitual offender proceedings.
 

 On May 2, 2006, the state filed an amended bill of information charging the defendant as a fourth felony offender. After delays, which will be addressed in this opinion, the habitual offender hearing took place on November 12, 2008. The trial court determined the defendant to be a fourth felony offender and imposed a sentence of 20 years at hard labor without benefits and with credit for time served. The defendant appealed.
 

 JaDISCUSSION
 

 Delay in Habitual Offender Proceedings
 

 The defendant’s first and second assignments of error complain of the delay in filing and prosecuting the habitual offender bill of information. He argues that the trial court either lacked jurisdiction to sentence him as an habitual offender because of the delay or that the trial court erred in denying his motion to quash the bill of information charging him as an habitual offender.
 

 La. R.S. 15:529.1, the statute governing habitual offender proceedings, expressly provides that “at any time, either after conviction or sentence,” a multiple bill may be filed against a defendant who has been convicted of a felony. La. R.S. 15:529.1(D)(l)(a);
 
 State v. Toney,
 
 2002-0992 (La.4/9/03), 842 So.2d 1083. Although no specific time limit for filing is provided by the statute, the supreme court has held that the statute “does not allow an indefinite time in which the district attorney may file the multiple offender bill once the necessary information is available.”
 
 Toney, supra; State v. McQueen,
 
 308 So.2d 752, 755 (La.1975). Rather, the district attorney must file the multiple offender bill “within a reasonable time after the necessary information is available.”
 
 Toney, supra; McQueen, supra.
 
 The
 
 McQueen
 
 court reached this conclusion by relying on the defendant’s constitutional right to a speedy trial and the La. C. Cr. P. art. 874 requirement that sentences be imposed without unreasonable delay.
 
 Toney, supra; McQueen, supra.
 

 | sWhen the district attorney acquired the knowledge that the defendant is a multiple offender is an important factor to consider in determining whether the bill was timely filed.
 
 State v. Muhammad,
 
 2003-2991 (La.5/25/04), 875 So.2d 45. However, the determination of whether the habitual offender hearing was held within a reasonable time depends on the facts and circumstances of each case.
 
 Id.; Toney, supra.
 

 The defendant complains of the state’s delay both in filing and in prosecuting the habitual offender bill. However, the defendant knew of the state’s intent to multiple bill him on September 16, 2002, the date he voluntarily entered the plea agreement which included a 20-year sentence as an habitual offender. On January 13, 2006, this court remanded the matter for new habitual offender proceedings. On March 13, 2006, the state filed a motion ordering the defendant to appear for arraignment on the habitual offender bill. The bill was filed on May 2, 2006, at which time the defendant appeared with counsel and pled not guilty. The filing of the habitual offender bill within four months after remand for new proceedings is not unreasonable under the facts of this case.
 

 The next issue is whether there was an unreasonable delay by the state in prosecuting the habitual offender bill after remand such that the trial court should have granted the defendant’s motion to quash the bill or should have been deprived of jurisdiction to sentence the defendant. The record shows that there was
 
 *323
 
 a 30-month delay between the filing of the multiple offender bill and the hearing. The bill was filed on May 2, 2006, and the hearing did not occur until November 12, 2008.
 

 |4Under La. C. Cr. P. art. 521, the defendant would generally have 15 days after arraignment within which to file pretrial motions. However, he filed nothing after his arraignment on May 2, 2006, when he pled not guilty. On November 2, 2006, the state filed a motion to set the hearing date. Thereafter, the defendant finally filed a discovery motion and motions to suppress/quash asserting the inadequacy of the prior convictions as a basis for the multiple bill. The hearing on the motions to suppress / quash was set for January 16, 2007, at which time the defendant filed a supplemental motion to quash on the grounds that more than one year had lapsed since the matter was remanded. Because of the new motion, the matter was then reset for February 7, 2007.
 

 On February 7, 2007, the trial court heard and denied the defendant’s motions and began the habitual offender hearing. However, the defendant refused to go forward with the hearing and insisted on firing his attorney. The trial court granted the defendant a continuance and reset the matter for April 4, 2007, upon the defendant’s request for an earlier date after the trial court first proposed setting the matter on August 15, 2007.
 

 The defendant failed to obtain new counsel, so the matter could not be heard on April 4, 2007. In September 2007, the defendant filed with this court an application for mandamus. He complained that the habitual offender proceedings had not taken place. This court granted the writ on October 11, 2007, ordering the trial court to
 

 promptly conclude the proceedings, either after habitual offender proceedings, if the state files and prosecutes a bill, or for imposition of a sentence for the primary offense, if the state does not elect to | Rprosecute the applicant as a habitual offender, and a sentence has not previously been properly imposed.
 

 It now appears that the defendant misrepresented to this court either that the state had not instituted the habitual offender proceedings or that he had not yet been afforded a hearing on the matter.
 

 The habitual offender hearing was then set for December 4, 2007, at which time the defendant, who appeared in proper person, was argumentative with the court, advised the court that he was not ready to proceed, and again insisted that he would hire an attorney. The trial court continued the matter until April 8, 2008, but ordered the defendant to have an attorney enroll by March 4, 2008. When no attorney appeared on March 4, 2008, to enroll on behalf of the defendant, the trial court appointed counsel.
 

 Thereafter, the matter was twice continued at the state’s request in April and June, continued again in July because the defendant had not been transported for court, and continued once more on September 2, 2008, due to an “emergency situation” which appears attributable to Hurricane Gustav. The habitual offender hearing finally took place on November 12, 2008.
 

 Reviewing the history of this matter, it is clear that the majority of the delays were wholly attributable to the defendant. After his arraignment on the bill, he waited six months before filing motions. When his motions were denied, he delayed the habitual offender hearing by firing his attorney. He then failed to hire new counsel as he said he would. The defendant’s late filings of motions, his requests for continuances, and his repeated promises to
 
 *324
 
 retain counsel and persistent failure to do so all appear as efforts to delay | fihis adjudication as a fourth felony offender. The state was ready to proceed with the habitual offender hearing on February 7, 2007, but it was the defendant who stopped the proceedings. Thereafter, only two delays are attributable to the state, whereas the majority of the delays in the matter are attributable to the defendant.
 

 Considering his responsibility for causing most of the delays, the defendant cannot show that he was prejudiced by the delays. We find that the habitual offender hearing was held within a reasonable time. The defendant’s motion to quash was properly denied, and the trial court retained jurisdiction to sentence the defendant as an habitual offender. Therefore, both the first and second assignments of error lack merit.
 

 Removal from Courtroom
 

 In his third assignment of error, the defendant asserts that the trial court erred in removing him from the courtroom during the habitual offender hearing on November 12, 2008. He asserts that he was not warned about his conduct prior to removal, that he did not persist in disruptive conduct following such a warning, and that his behavior did not rise to the level of conduct which justified his exclusion from the courtroom.
 

 La. C. Cr. P. art. 882(A)(1) states:
 

 A. A defendant initially present for the commencement of trial shall not prevent the further progress of the trial, including the return of the verdict, and shall be considered to have waived his right to be present if his counsel is present or if the right to counsel has been waived and:
 

 (1) He voluntarily absents himself after the trial has commenced, whether or not he has been informed by the court of his obligation to be present during the trial; or
 

 |7(2) After being warned by the court that disruptive conduct will cause him to be removed from the courtroom, he persists in conduct which justifies his exclusion from the courtroom.
 

 The record shows that at the start of the habitual offender hearing on November 12, 2008, Darrell Avery, the attorney appointed to represent the defendant, moved to continue the matter. As grounds for the continuance, Avery explained that the defendant believed his mother had retained another attorney, Rick Gallot, to represent him and that he did not want Avery representing him at the hearing. The trial court denied the motion to continue the hearing after learning that Mr. Gallot had been retained by the defendant’s mother to do appeal work but not to represent the defendant at the habitual offender hearing. The following exchange then took place:
 

 By Mr. Cottonham:
 
 I fire Mr. Gallo [sic] — I fire Mr. Avery under — confidential. He hadn’t represented me right here, never came to see me, he hadn’t been down there in two months.
 

 By the Court:
 
 Denied. Denied.
 

 By Mr. Cottonham:
 
 No, I’m not going through the process when I’m telling you without my lawyer here.
 

 By the Court:
 
 I’m telling you that you either are or I find you in contempt and you can leave the Courtroom and we’ll continue to go.
 

 After being warned by the trial court that he would be held in contempt and removed from the courtroom, the defendant continued to insist that wanted to fire his attorney, that his mother had retained Gallot, and that his court-appointed counsel was not representing him to the best of his ability. The following exchange then took place:
 

 
 *325
 

 By the Court:
 
 This hearing is going to continue today. If the Second Circuit Court of Appeal thinks Mr. Avery is ineffective then they’ll reverse it.
 

 |
 
 ¡By Mr. Cottonham:
 
 No. I’m not going — I’m not going through it. I have the right to get me another attorney and you have the right to appoint me a[sic] attorney.
 

 By the Court:
 
 Mr. Cottonham, you pulled this stunt on us now for about the fifth — you had one of the best attorneys.
 

 By Mr. Cottonham:
 
 You have the right to appoint—
 

 By the Court:
 
 Let me speak or I’m gonna [sic] put you in contempt and your hearing won’t even go forward for sure. You fired one of the best attorneys in this town when you fired Chris Bowman.
 

 By Mr. Cottonham:
 
 And I can fire again if I’m — if it’s a conflict of interest.
 

 By the Court:
 
 No, you’re not, not with this Court you don’t. You either sit down and have a hearing or you can go out—
 

 By Mr. Cottonham:
 
 I can go out—
 

 By the Court:
 
 I’ll put on the record that you won’t be present cause [sic] you’re not cooperative.
 

 It appears that the matter then proceeded without the defendant’s presence in the courtroom.
 

 The record establishes that the defendant was warned twice about his disruptive conduct before he was removed from the courtroom so that the hearing could proceed. It also appears that the defendant chose to be removed rather than remain in a hearing with Mr. Avery, the court-appointed counsel he wanted to fire. However, Mr. Avery remained present throughout the hearing and acted in his capacity as counsel for the defendant by objecting during testimony of the state’s witnesses, cross-examining the witnesses, and making an oral motion for dismissal on the defendant’s behalf.
 

 | ¡/Throughout the 30 months it took for the habitual offender hearing to take place, the defendant acted in ways to delay the proceedings. He initially fired his attorney rather than proceed with the hearing on February 7, 2007, and he never retained new counsel despite repeatedly telling the trial court that he would. He was afforded court-appointed counsel who represented him at the habitual offender hearing, and he offered no legitimate basis for replacing Mr. Avery. It is clear that the defendant sought to further delay the proceedings and avoid being sentenced as an habitual offender. The defendant was warned by the trial court but persisted in his disruptive behavior in an effort to yet again halt the proceedings. The defendant opted to leave the courtroom when the trial court did not give in to his baseless demands.
 

 Under these facts, we find that the defendant’s exclusion from the courtroom was justified and apparently voluntary. We find no error that would require this court to vacate the habitual offender adjudication or reverse the sentence. The assignment of error is without merit.
 

 CONCLUSION
 

 For the reasons stated, we affirm the defendant’s habitual offender adjudication and sentence.
 

 AFFIRMED.