# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 10-1494


**STATE OF LOUISIANA**

**VERSUS**

**JOSEPH MICHAEL ELIE, III**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 297,861
HONORABLE THOMAS MARTIN YEAGER, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## SHANNON J. GREMILLION
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Elizabeth A. Pickett, Billy Howard Ezell, and Shannon J. Gremillion, Judges.


**CONVICTION AFFIRMED; REMANDED FOR RESENTENCING WITH INSTRUCTIONS.**



**James C. Downs**
**District Attorney - 9th Judicial District Court**
**701 Murray Street**
**Alexandria, LA 71301**
**(318) 473-6650**
**Counsel for Appellee:**
**State of Louisiana**

**John T. Giordano**
**Thomas R. Willson**
**Assistant District Attorneys – 9th Judicial District Court**
**Post Office Drawer 1472**
**Alexandria, LA 71309-1472**
**(318) 473-6650**
**Counsel for Appellee:**
**State of Louisiana**

**Carey J. Ellis, III**
**Louisiana Appellate Project**
**707 Julia St.**
**Rayville, LA 71269**
**(318) 728-2043**
**Counsel for Defendant/Appellant:**
**Joseph Michael Elie, III**

**Joseph Michael Elie, III**
**Louisiana State Penitentiary**
**Hic-4**
**Angola, LA 70712**
**Pro Se**
**Joseph Michael Elie, III**

**GREMILLION, Judge.**

Police found a Taurus 9mm handgun in a room at the home of Defendant's, Joseph Michael Elie, III, mother. The following year, a dog was shot with a .22 rifle at the same home. The State alleged that Defendant, a convicted felon, was in possession of these two firearms in contravention of La.R.S. 14:95.1. He was charged and convicted of two counts of possession of a firearm by a convicted felon.

Defendant was sentenced, on each count, to serve fifteen years at hard labor with the first ten years to be served without benefit of probation, parole, or suspension of sentence. The State then filed a bill of information charging Defendant as a habitual offender, and he was adjudicated as such. The trial court sentenced him to life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence though it is unclear which one of Defendant's two convictions was enhanced.

Defendant is now before this court asserting seven counsel-filed assignments of error and three pro se assignments of error.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. We find one such error. Although the trial court acknowledged that there were two counts, it appears it enhanced only one of Defendant's sentences at the habitual offender proceeding for possession of a firearm by a convicted felon. For reasons provided below, we remand this matter to the trial court for resentencing, at which time the trial court must specify which of Defendant's two convictions is being enhanced. *State v. Clennon*, 98-1370

1

(La.App. 5 Cir. 6/30/99), 738 So.2d 161; and *State v. Webster*, 95-605 (La.App. 3 Cir. 11/2/95), 664 So.2d 624.

## ASSIGNMENT OF ERROR NUMBER ONE &
## PRO SE ASSIGNMENT OF ERROR NUMBER ONE

In his first counsel-filed and pro se assignments of error, Defendant contends there was insufficient evidence to support his convictions of possession of a firearm by a convicted felon.

> In evaluating the sufficiency of the evidence to support a conviction, a reviewing court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 99 S.CT. 2781, 61 L.Ed.2d 560 (1979); *State v. Captville*, 448 So.2d 676, 678 (La.1984). Additionally, where circumstantial evidence forms the basis of the conviction, the evidence must exclude every reasonable hypothesis of innocence, "assuming every fact to be proved that the evidence tends to prove." La. R.S. 15:438; *see State v. Neal*, 2000-0674 p. 9 (La.6/29/01), 796 So.2d 649, 657, *cert. denied*, 535 U.S. 940, 122 S.CT. 1323, 152 L.Ed.2d 231 (2002). The statutory requirement of La.R.S. 15:438 "works with the *Jackson* constitutional sufficiency test to evaluate whether all evidence, direct and circumstantial, is sufficient to prove guilt beyond a reasonable doubt to a rational jury." *Neal*, 2000-0674 p. 9, 796 So.2d at 657.

*State v. Draughn*, 05-1825, p. 7 (La.1/17/07), 950 So.2d 583, 592, *cert. denied*, 552 U.S. 1012, 128 S.CT. 537, 169 L.Ed.2d 377 (2007).

Possession of a firearm by a convicted felon is governed by La. R.S. 14:95.1, which provides that it is unlawful for any person who has been convicted of certain enumerated felonies to possess a firearm. However, La. R.S. 14:95.1(C)(1) states that this section "shall not apply to any person who has not been convicted of any felony for a period of ten years from the date of completion of sentence, probation, parole, or suspension of sentence."

In *State v. Recard*, 97-754, p. 9 (La.App. 3 Cir. 11/26/97), 704 So.2d 324, 329, *writ denied*, 97-3187 (La.5/1/98), 805 So.2d 200, this court held:

> To convict Defendant of possession of a firearm by a convicted felon, the State must prove beyond a reasonable doubt: (1) the possession of a firearm; (2) a previous conviction of an enumerated felony; (3) absence of the ten-year statutory period of limitation; and, (4) general intent to commit the offense. La. R.S. 14:95.1; *State v. Husband*, 437 So.2d 269 (La.1983); *State v. Tatum*, 27,301 (La.App. 2 Cir. 9/27/95); 661 So.2d 657.

*State v. Hanner*, 09-1109, pp. 4-5 (La.App. 3 Cir. 4/14/10), 35 So.3d 1178, 1181-82.

> Neither possession of a firearm by a convicted felon nor illegal carrying of weapons requires actual physical possession of a firearm upon the person of the accused; constructive possession of a firearm satisfies the possessory element. *State v. Armentor*, 94-745 (La.App. 3 Cir. 2/1/95); 649 So.2d 1187, *writ denied*, 95-0557 (La.6/30/95); 657 So.2d 1027, citing *State v. Day*, 410 So.2d 741 (La.1982). Constructive possession exists when the illegal object is subject to the defendant's dominion and control. *State v. Johnson*, 463 So.2d 778 (La.App. 4 Cir.1985).

*State v. Brooks*, 99-478, p. 4 (La.App. 3 Cir. 12/8/99), 756 So.2d 336, 339, *writ denied*, 00-1492 (La. 5/25/01), 792 So.2d 750.

**AUGUST 1, 2008 / TAURUS 9MM HANDGUN**

Deputy Javier Molinary testified that he was dispatched to Linda Elie's residence in reference to harassing phone calls. Linda gave a written statement at that time. Her statement read as follows:

> My name is Linda F. Elie. I live at 225 Robinson Bridge Road. My son started using abusive language and threatening me and my life today. I asked him to please leave my house and never come back again. He swore he would do me in. He repeatedly called me on the phone with threats. I called the police and when he came, I told him my son had (2) guns I knew of because I've held them in my hands. I knew they were here. The policeman found one in his search of his room, where I asked him to search. There is another one somewhere we couldn't find.
>
> I never want my son to come back to my home again, and I never want him to call me.
>
> I never want to see him again. I love him, but I am through trying to save him.

Deputy Molinary testified that a Taurus 9mm handgun was found in a dresser drawer in the "suspect's" bedroom. He further testified there was a bed in the room, and the room appeared to be occupied by a male, as it contained men's clothing. He also found a box that contained photos of Defendant. Deputy Molinary did not know if Defendant had been at Linda's home any time prior to her calling the police. Deputy Molinary also saw a .22 rifle in Linda's bedroom, but she said the gun was hers, and she used it for protection. Deputy Molinary testified that Linda indicated she did not want to pursue charges against Defendant.

Linda Elie testified that Defendant was not at her residence on the date in question. He did, however, call her several times. Linda testified that she did not recall Defendant living with her or spending the night at her home the week or month prior to the calls. She thought Defendant was living in Monroe at that time but said he traveled from place to place because he "knew several young ladies." Linda denied any memory of writing a statement for police and failed to recognize the handwriting on the statement as her own.

Defendant admitted that he had been convicted of aggravated battery in 1995, aggravated battery in 1996, manslaughter in 2001, simple battery in 2007, and illegal use of weapons in 2009. Defendant testified that he was not living with his mother in July and August 2008 and last lived with her in June 2002. Defendant stated that in 2002, his mother financed her home, and the mortgage company would not allow convicted felons to live in the home. Because he was on parole, he could not leave Alexandria. Therefore, he had his parole "switched" to his aunt's house on Hargis Street. Defendant further testified that he had lived in Monroe off and on since September 2007. Defendant received a letter dated November 6, 2008, at a Monroe address. In that letter he was informed that if he

did not attend or complete a class, his food stamp benefits would be reduced or cancelled. Defendant also testified that he was not asked his address when he was arrested. We note that the Robinson Bridge Road address was listed when Defendant was arrested on January 22, 2009.

Defendant denied owning the Taurus 9mm handgun found at his mother's home. He testified that it was not in his possession or near him in August 2008. When asked about the men's clothing in his mother's home, Defendant stated it was found in a storage room, and there was no bed in the room. He further stated the clothing could have belonged to his younger brother or his cousins, Ralph and Conrad.

## JUNE 1, 2009/.22 CALIBER RIFLE

James Marves lived next door to Defendant's mother, Linda Elie. He called the sheriff's office on June 1, 2009 because Defendant shot a dog. Marves made an in-court identification of Defendant. He testified that, as far as he knew, Defendant lived at Linda's residence. When asked what Defendant used to shoot the dog, Marves stated, "I didn't get a visual, close-up visual of the weapon or what caliber but I assume it was a .22 caliber, long barrel, single barrel .22."

In his statement to police, Marves said the events occurred at 5:10 p.m. and "he saw a young man whom I believe to be whom they call him Michael" shoot the dog, return to the residence, and get a rake. Marves gave a second statement in which he said the events occurred between 2:30 and 3:00, and he was absolutely certain it was Defendant who shot the dog.

It is relevant to note that at the time of trial, Marves had a pending charge of trespassing. Linda was the complainant in that matter.

5

Deputy Molinary was dispatched to Marves' residence at 5:22 on June 1, 2009, regarding the shooting of a dog. Deputy Molinary observed a dead dog. He also took a statement from Marves. Deputy Molinary testified that in that statement, Marves said Defendant shot the dog. Defendant was subsequently arrested.

While Deputy Molinary filled out booking paperwork, he asked Defendant three or four times why he shot the dog. Deputy Molinary testified that Defendant said he did not shoot the dog. Defendant then said, "you know the dog was vicious, it was vicious, it was trying to attack my mom. Last week it was trying to attack my mom." Deputy Molinary indicated Defendant's identification listed his address as 225 Robinson Bridge Road, which was the residence next to that of Marves. Deputy Molinary testified that he was present at a prior court proceeding when Linda stated she shot the dog.

Reserve Deputy Darryl Shamblin was with Deputy Molinary on June 1, 2009. When Defendant was asked why he shot the dog, Deputy Shamblin testified that Defendant "basically said that he was afraid that - something along the lines of he was afraid for his momma . . . it was basically along the lines I was - I was afraid for my mom."

Detective Chance Cappel testified that a .22 caliber long rifle was found in the air conditioner vent at Linda's residence when a search warrant was executed on June 10, 2009. Deputy Cappel testified that Linda said she put the gun in the vent. Deputy Molinary testified that the .22 rifle appeared to be the same gun he saw in the home in 2008.

Linda Elie testified that in June 2009, a dog was on her property. A week or a week-and-a-half prior to the dog being shot, the dog tried to bite her and would

not let her out the back door of her home. The sheriff's department or animal control came out at that time but did not try to trap the dog. The dog was at her home again on June 1, 2009. Jacoby, a two year old, and Nicki Smith, who lived in Linda's home at the time, were in the back yard that day when she shot the dog from the back door of her home.

Linda further testified that Defendant moved the dead dog for her. Linda gave a statement to police wherein she indicated Defendant was in the yard when the dog was shot. However, she testified that she told police he drove up some time after she shot the dog. Linda further testified that Marves was not home when she shot the dog, and she thought he drove up when Defendant was putting the dead dog in a trash bag. Linda testified that, when Deputy Molinary was arresting Defendant, she told Detective Molinary she shot the dog. Linda further testified that she put the gun in the air conditioning vent because her nephew was at her home.

Smith testified that she knew Linda and Defendant, as she was the partner of Defendant's oldest sister. Smith testified that she and Jacoby were in the back yard when the dog approached them and began barking. She was concerned because the dog had spots all over it and had "messed with" her dog. Linda then shot the dog from the back door of her home. Smith testified that Marves was not home when the incident occurred. She also testified that Defendant was not at Linda's home at that time.

Defendant denied shooting the dog. He testified that he was not present when the dog was shot but arrived at the home later. Defendant admitted that he attempted to move the dog, but it was not dead and tried to bite him. Defendant testified that Marves arrived after the dog had been shot and spoke to him while he

was trying to move the dog. Marves said he would call to have the animal trap removed. Additionally, when Marves called 911, Defendant spoke to the 911 operator. Defendant testified that there was an ongoing property dispute between Marves and his family.

Defendant testified that he told Deputy Molinary that he did not shoot the dog, and Deputy Molinary told him to tell the trial court he shot the dog because it was trying to bite his mother.

Defendant also testified that the .22 rifle police found had been in his mother's home since his grandmother lived there. Further, it was in the air conditioner vent because children visited the home.

**PRIOR CONVICTIONS**

Warren Gates, a parole officer, made an in-court identification of Defendant and indicated that he was Defendant's parole officer. He testified that Defendant's date of birth was July 15, 1977, and he resided at 225 Robinson Bridge Road. That information was verified when Defendant was released from prison. Defendant was released from incarceration on September 12, 2001, and from parole supervision on March 9, 2008.

Ray Delcomyn, an expert in fingerprint identification and analysis, examined Defendant's fingerprints and testified Defendant was the same person who had been convicted of illegal use of weapons in trial court docket number 295,289 and manslaughter in trial court docket number 240,891.

**ANALYSIS: AUGUST 1, 2008/TAURUS 9MM HANDGUN**

The State proved Defendant had a previous conviction for an enumerated felony, as he had been convicted of manslaughter, illegal use of weapons, and aggravated battery. La.R.S 14:95.1; La.R.S. 14:2(B). The State also proved that

8

ten years had not elapsed from the time Defendant completed his sentence for manslaughter when he committed the offenses set forth herein. Thus, the issue is whether Defendant constructively possessed the Taurus 9mm handgun found at his mother's home.

Defendant asserted he lived in Monroe at the time of the offense and did not own the Taurus 9mm handgun. Rather, he only visited his mother's home occasionally for "big parties," for "fishing and stuff," and for "Christmas."

Linda denied that her son lived with her. She denied knowing who owned the weapon. She denied having called the police out of fear of her son's threats. She even denied that the statement provided to the police was hers.

However, the investigating officer testified that he watched her write the statement, he watched her sign the statement, and then he took possession of the statement. While he was on the stand the statement was duly offered, filed, introduced, and admitted into evidence. Immediately thereafter it was published to the jury.

Accordingly, the jury knew that Linda had reported that the 9mm belonged to "my son" and that she had asked the police to look for it in "his room" where it was found. Her statements are corroborated by the officer having found men's clothing, photographs of Defendant, and some sort of identification connected to Defendant in that room.

In *State v. Mickel*, 09-953 (La.App. 5 Cir. 5/11/10), 41 So.3d 532, *writ denied*, 10-1357 (La. 1/7/11), 52 So.3d 885, the defendant was convicted of possession of a firearm by a convicted felon. At trial, police testified that they obtained a search warrant for a residence located at 1127 23rd Street. During the

9

search, police found a shoe box containing a semi-automatic handgun under the bed.

The fifth circuit noted that a detective determined the defendant resided at the house after conducting a computer search and speaking with the defendant's probation officer. S.J., a female who resided at the house, admitted she and the defendant shared the master bedroom, he slept there two or three times a week, and the clothing in the bedroom belonged to him. The fifth circuit found the State presented sufficient evidence to prove the defendant had dominion and control of the handgun, as it was found in a shoebox under a bed where he customarily slept.

In *State v. Marks*, 09-260 (La.App. 5 Cir. 10/27/09), 28 So.3d 342, *writ denied*, 09-2568 (La. 5/7/10), 34 So.3d 860, the defendant was convicted of possession of a firearm by a convicted felon. On appeal, he argued the State did not prove he had constructive possession of a gun found in an apartment located at an Alexander Court apartment by a probation officer.

Approximately one month before the gun was found, the defendant reported to his probation officer that he was living at the Alexander Court address, he was monitored on house arrest at that address, the occupant of the apartment told a second probation officer she lived there with her daughter and the defendant, the occupant testified that she did not own the gun found in the apartment or know the gun was there, and the gun was found in a bedroom closet that contained men's clothing. After reviewing this evidence, the fifth circuit concluded the State put on sufficient evidence to prove the defendant lived at the Alexander Court address at the time of the search, and the gun found in the closet with his clothes was under his dominion and control. In making its ruling, the court stated: "Courts have

generally found evidence of constructive possession when a gun is found in an area customarily occupied by the defendant." *Id*. at 350.

In *State v. Vassar*, 07-171 (La.App. 5 Cir. 8/28/07), 966 So.2d 654, *writ denied*, 07-2132 (La. 8/22/08), 988 So.2d 260, the defendant was convicted of possession of a firearm by a convicted felon after police found a shotgun on top of a dresser in the bedroom of his father's trailer. The trailer's address was listed on the defendant's vehicle registration and driver's license. The defendant also gave the trailer's address as his own when he executed the consent to search form.

The defendant's wife testified that although they both had keys to the trailer, they had never lived there. Further, they had never spent the night in the trailer or kept any belongings there. The defendant's wife admitted her vehicle's registration and that of the defendant listed the trailer's address. She also admitted that the defendant used the address on his driver's license. The defendant's wife further testified that she visited her father-in-law at the trailer three to four times a month and had never seen the gun in the trailer before.

The defendant testified that the trailer belonged to his father. The defendant denied living at the trailer, but admitted this was not the first time he had used the trailer for a tryst. The defendant also admitted that he occupied the bed in the room where the gun was found moments before police arrived. The defendant further admitted using the address on his driver's license and vehicle registration but denied giving it to police. The defendant explained that he was living in a hotel at the time he got his license and he needed an address to provide to the Department of Corrections. He then explained that he did not update his license with his new address. He denied possessing the shotgun and explained that he first

11

saw the gun when police found it. Police testified the bed the defendant was in was the only bed in the trailer, and the gun was visible upon entering the trailer.

The fifth circuit held the evidence was sufficient to conclude the defendant was in constructive possession of the gun found on the dresser next to the bed he occupied when police arrived.

In *State v. Paul*, 05-612 (La.App. 5 Cir. 2/14/06), 924 So.2d 345, the fifth circuit found the State proved beyond a reasonable doubt that the defendant had dominion and control of a gun found between the pillows in the room he identified as his bedroom. The defendant's father admitted the defendant slept in the room when spending the night there. In addition, personal items bearing the defendant's name were found in the room.

In *State v. Jackson*, 97-1246 (La.App. 5 Cir. 4/13/98), 712 So.2d 934, *writ denied*, 98-1454 (La. 10/16/98), 726 So.2d 37, the fifth circuit held the evidence was sufficient to prove the defendant knowingly possessed a gun found in his bedroom under the mattress where he regularly slept despite the argument that other friends and relatives stayed in the bedroom during a recent visit. The fifth circuit noted the defendant's mother denied owning the gun.

In *State v. Ware*, 01-194 (La.App. 5 Cir. 8/28/01), 795 So.2d 495, the defendant was convicted of possession of a firearm by a convicted felon. On appeal, he argued he did not have constructive possession of the gun found in the master bedroom closet because he had moved out of the residence almost a month before the gun was recovered.

A gun was found in the closet in the master bedroom on January 27, 2000. Testimony indicated that when the defendant and his wife moved into the home, the landlord heard the defendant tell his wife the larger closet in the master

12

bedroom was to be his closet. The closet in which the gun was found was filled with men's clothing and approximately fifty to seventy-five pairs of tennis shoes. The landlord last saw the defendant at the home on January 4, 2000, and testified that the defendant called him from the residence several times after that date. Although the defendant's wife testified the defendant left the home in December, the defendant's mother said the defendant visited his wife at the home. Further, a photograph of the defendant dated January 28, 2000, was introduced into evidence, and the landlord said the photograph was taken inside the home.

The defendant's wife testified that he moved out of their home on December 1, 1999. She claimed the gun found by police belonged to a male friend who moved into the home in early January. She further testified that the defendant had no keys to the residence and never returned after leaving in December. On cross-examination, she testified that she married the defendant on March 18, 2000.

A female friend of the defendant's wife testified that she moved into the home on January 14, 2000, and lived there for a few months. She indicated the defendant did not live there while she did. The defendant's mother testified that he lived with her in December of 1999. Her testimony was corroborated by her neighbor. The fifth circuit concluded the evidence indicated the defendant was in constructive possession of the gun found in "his closet." *Id*. at 501.

We find similarities between *Ware* and our present Defendant. Though the weight of the evidence suggested the defendant in *Ware* did not live in the home at the time the firearm was found, there was evidence that he had lived there in the past and that the place where the gun was found was still, constructively at least, his closet. Likewise, the weight of the evidence here indicates that Defendant no longer lived in the home of his mother. But the jury saw and heard evidence that,

13

when viewed in the light most favorable to the prosecution, any rational trier of fact could have concluded that the part of the home where the gun was found was, constructively at least, his room. We find, therefore, that the evidence was sufficient to allow a rational jury to conclude that Defendant did constructively possess the subject 9mm handgun.

**ANALYSIS: JUNE 1, 2009/.22 CALIBER RIFLE**

Defendant contends self-defense or defense of others may provide a defense to the charge. He further claims that Marves had a vengeful motive for testifying falsely against him. Moreover, he contends that Linda's testimony was sufficient to prove he was not in illegal possession of a firearm on the date of the offense.

Neither self-defense nor defense of others was argued during defense counsel's closing argument. Additionally, the jury was not instructed to consider either defense during its deliberations. A legal argument cannot be made for the first time on appeal. Thus, the defenses asserted by Defendant in brief to this court will not be considered. *See State v. Perkins*, 07-423, p. 7 (La.App. 3 Cir. 10/31/07), 968 So.2d 1178, 1183, *writ denied*, 07-2408 (La. 5/9/08), 980 So.2d 688.

As with the previous analysis, the State proved Defendant was convicted of an enumerated felony and that ten years had not elapsed since Defendant completed his sentence for manslaughter. Thus, we must determine whether Defendant possessed the .22 rifle found in Linda's home.

Marves testified that Defendant shot the dog with a .22 rifle. The jury clearly chose to believe Marves' testimony over that of Defendant, his mother, and Smith. This court chooses not second-guess that credibility determination.

# ASSIGNMENT OF ERROR NUMBER TWO

In his second counsel-filed assignment of error, Defendant contends the trial court erred when it failed to sever the charges for trial.

Louisiana Code of Criminal Procedure Article 493 provides:

> Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan; provided that the offenses joined must be triable by the same mode of trial.

However, "[i]f it appears that a defendant or the state is prejudiced by a joinder of offenses in an indictment or bill of information or by such joinder for trial together, the court may order separate trials, grant a severance of offenses, or provide whatever other relief justice requires." La.Code Crim.P. art. 495.1.

> In *State v. Brooks*, 541 So.2d 801, 805 (La.1989), the supreme court discussed the grounds for a motion to sever, stating:
>
> > The motion to sever is addressed to the sound discretion of the trial court[,] and the court's ruling should not be disturbed on appeal absent a showing of an abuse of discretion. *State v. Williams*, 418 So.2d 562, 564 (La.1982). In ruling on such a motion, the trial court must weigh the possibility of prejudice to the defendant against the important considerations of economical and expedient use of judicial resources. In determining whether joinder will be prejudicial, the court should consider the following:
> >
> > > whether the jury would be confused by the various counts; whether the jury would be able to segregate the various charges and evidence; whether the defendant would be confounded in presenting his various defenses; whether the crimes charged would be used by the jury to infer a criminal disposition and finally, whether, especially considering the nature of the charges, the charging of several crimes would make the jury hostile.

15

*State v. Washington*, 386 So.2d 1368 (La.1980) (citations omitted).

In *Washington*, the supreme court noted that the joinder of different charges involves evidence of other crimes. Addressing other crimes evidence, the court explained:

> In Louisiana, "Evidence of crimes other than the one for which the defendant is on trial is admissible as 'other crimes' evidence when the two incidents exhibit such peculiar modes of operation to distinguish them as the work of one person" and when they are relevant to a material issue in the case. La.R.S. 15:446 [repealed and replaced with La.Code Evid. art. 404]; *State v. Carter*, [352 So.2d 607 (La.1977) ]; *State v. Prieur*, 277 So.2d 126 (La.1973).

*Id*. at 1372.

*State v. H.A., Sr.*, 10-95, p. 11-12 (La.App. 3 Cir. 10/6/10), 47 So.3d 34, 42-43.

Defendant filed a Motion for Severance on February 4, 2010. The motion was denied at a hearing held on March 8, 2010. Defendant sought review of the trial court's ruling in this court. On May 7, 2010, this court issued the following ruling:

> **<u>WRIT DENIED</u>:** Based on the record before this court, we cannot conclude the trial court abused its discretion when denying the Motion for Severance. Additionally, the admissibility of evidence, pursuant to La.Code Evid. art. 404(B), was not addressed by the trial court, and is, therefore, not properly before this court for review.
>
> For these reasons, Defendant's writ application is denied.

*State v. Elie*, an unpublished writ ruling bearing docket number 10-422 (La.App. 3 Cir. 5/7/10).

In *State v. Chambers*, 99-678, p. 3 (La.App. 3 Cir. 1/19/00), 758 So.2d 231, 233, *writ denied*, 00-551 (La. 9/22/00), 768 So.2d 600, this court stated the following:

> A defendant may seek review of a pretrial ruling by the trial court even after the denial of a pretrial supervisory writ application seeking review of the same issue:

16

> The prior denial of supervisory writs does not bar reconsideration of an issue on appeal, nor does it prevent the appellate panel from reaching a different conclusion. *State v. Fontenot*, 550 So.2d 179 (La.1989); *State v. Decuir*, 599 So.2d 358 (La.App. 3 Cir.1992), *writ denied*, 605 So.2d 1095 (La.1992). When a defendant does not present any additional evidence on this issue after the pre-trial ruling, the issue can be rejected on appeal. *See, e.g.*, *State v. Regan*, 601 So.2d 5 (La.App. 3 Cir.1992), *writ denied*, 610 So.2d 815 (La.1993); *State v. Wright*, 564 So.2d 1269 (La.App. 4 Cir.1989). Judicial efficiency demands that this court accord great deference to its pre-trial decision unless it is apparent that the determination was patently erroneous and produced unjust results. *State v. Decuir*, *supra*, at 360.

*State v. Hebert*, 97-1742 (La.App. 3 Cir. 6/3/98); 716 So.2d 63, 67, *writ denied*, 98-1813 (La.11/13/98); 730 So.2d 455, *citing State v. Magee*, 93-643, p. 2 (La.App. 3 Cir. 10/5/94); 643 So.2d 497, 499.

We will revisit the trial court's denial of Defendant's Motion for Severance, as the language used in this court's ruling indicates the issue was not exhaustively reviewed.

On appeal, Defendant contends the jury could not have considered each offense separately and would have relied on evidence of one of the charges to show his bad character, other bad acts, or other crimes. Furthermore, joining the two offenses was prejudicial and confusing. Thus, he was denied a fair trial.

The State contends the case at bar is similar to *State v. Hawkins*, 97-726, pp. 5-6 (La.App. 3 Cir. 10/29/97), 702 So.2d 1121, 1124-25, *writ denied*, 97-2976 (La. 4/3/98), 717 So.2d 230, in which this court stated the following:

> There is no evidence in this case to suggest that the denial of the defendant's motion for severance resulted in the denial of a fair trial to the defendant. The facts associated with the crimes charged are relatively simple, and we do not find that the jury was confused by the joinder of the two counts or was unable to distinguish the evidence pertaining to both charges. Moreover, we do not find that the defendant was confounded in presenting his defenses to the charges, that the joinder would have been used by the jury to infer that the defendant had a criminal disposition, or that the joinder would have

17

made the jury hostile toward him. The trial court instructed the jury to render a verdict on each count separately and that the evidence on one count could not be used to find the defendant guilty on the other count. There is no evidence that the jury did not follow these instructions. Accordingly, we find that the defendant has not satisfied his burden of proof on this issue, and this assignment of error is without merit.

The standard of review here is abuse of discretion. We conclude that the trial court did not err in denying Defendant's Motion for Severance. The crimes with which Defendant was charged were the same. However, the facts were relatively simple, and the jury would not have been confused by the joinder of the offenses or unable to distinguish the evidence pertaining to both charges. Moreover, Defendant was not confounded in presenting his defenses to the charges. Furthermore, the trial court instructed the jury to render a verdict on each count separately and that the evidence on one count could not be used to find Defendant guilty on the other count. There is no evidence that the jury did not follow these instructions. Accordingly, we find no merit in this assignment of error.

## ASSIGNMENT OF ERROR NUMBER THREE

In his third counsel-filed assignment of error, Defendant contends the consecutive fifteen-year sentences are excessive. Defendant asserts it was error for the trial court to order one fifteen-year sentence to be served consecutively to the other fifteen-year sentence. This matter is being remanded for resentencing due to a patent error. Thus, this assignment of error is moot.

## SUPPLEMENTAL ASSIGNMENT OF ERROR NUMBER ONE

In his counsel-filed supplemental assignment of error number one, Defendant contends the trial court erred by allowing a "pen pack" and documents into evidence that were not certified or authenticated. Defendant did not lodge an

18

objection at the habitual offender hearing to the State's proof of identity. Accordingly, this issue was not preserved for review. *State v. Wilson*, 06-1421, (La.App. 4 Cir. 3/28/07), 956 So.2d 41, *writ denied*, 07-1980 (La. 8/22/08), 988 So.2d 253.

## SUPPLEMENTAL ASSIGNMENT OF ERROR NUMBER TWO

In his counsel-filed supplemental assignment of error number two, Defendant contends the State did not meet its initial burden in order to prove third felony offender status. Defendant did not file an objection to the habitual offender bill of information challenging the validity of his prior convictions and did not raise these issues at the habitual offender hearing. Therefore, this claim has not been preserved for review. *See State v. Stevenson*, 03-1146, p. 3 (La.App. 5 Cir. 2/10/04), 868 So.2d 811, *writ denied*, 04-721 (La. 9/24/04), 882 So.2d 1166, *and writ denied*, 04-863 (La. 10/1/04), 883 So.2d 1004.

## SUPPLEMENTAL ASSIGNMENT OF ERROR NUMBER THREE

In his counsel-filed supplemental assignment of error number three, Defendant contends it was error to remove him from the courtroom during the taking of evidence and at sentencing. Defendant asserts that his conduct was not so disorderly, disruptive, and disrespectful that the trial court should have continued the proceedings in his absence.

During the presentation of the State's case at the habitual offender hearing, Defendant began making unsolicited comments to the trial court. After being told by the trial court several times to be quiet, Defendant persisted, and the trial court had him removed from the courtroom. The hearing proceeded in Defendant's absence, with the trial court requiring Defendant to return for his ruling on the habitual offender matter. During the trial court's ruling, Defendant again

19

interrupted. After the trial court told Defendant to listen and that he was "not going to interrupt anymore," Defendant persisted. Thus, the trial court had Defendant removed from the courtroom, stating it would have to sentence Defendant in absentia and forward him an order.[1] Defense counsel objected to Defendant's removal from the courtroom. The trial court proceeded to find Defendant a third felony offender, and sentenced him to life imprisonment without benefit of probation, parole, or suspension of sentence.

**HEARING**

Defendant did not object when the trial court first ordered him removed from the courtroom during the taking of evidence. Thus, this issue is not properly before this court for review. La.Code Crim.P. art. 841.

**SENTENCING**

Louisiana Revised Statute 15:529.1(D)(3) provides that when a judge finds a defendant has been convicted of a prior felony or felonies or acknowledges or confesses in open court, "the court shall sentence him to the punishment prescribed in this Section."

Louisiana Code of Criminal Procedure Article 835 states: "In felony cases the defendant shall always be present when sentence is pronounced. . . . If a sentence is improperly pronounced in the defendant's absence, he shall be resentenced when his presence is secured."

The historical notes to Article 835 state, in pertinent part:

---

[1] The transcript indicated Defendant left the courtroom after his first outburst stating,
"(AT WHICH TIME MR. ELIE IS ESCORTED OUT OF THE COURTROOM)."
When he later reentered, the transcript stated "(The defendant returns to the courtroom)."
Defendant's removal from the courtroom is not reflected in the court minutes.
      The transcript did not indicate when Defendant exited the courtroom the second time.
However, the court minutes state Defendant was removed from the courtroom, and the State, in
its brief to this court, indicates Defendant was not present when he was sentenced.

20

(a) This article following A.L.I. Code of Criminal Procedure, § 291, separately provides for presence of the defendant at pronouncement of sentence. The requirement of presence at sentencing is not included in the general provisions of Arts. 831 and 833, which specify the stages of the trial at which the defendant must be present. This separate treatment was induced by the fact that the defendant's absence at sentencing does not invalidate the trial, but requires resentencing in his presence.

In *State v. Cottonham*, 44,854 (La.App. 2 Cir. 12/16/09), 27 So.3d 320, *writ denied*, 10-171 (La. 9/3/10), 44 So.3d 693, the defendant argued that the trial court erred in removing him from the courtroom during the habitual offender hearing. He asserted he was not warned about his conduct prior to removal, that "he did not persist in disruptive conduct following such a warning, and that his behavior did not rise to the level of conduct which justified his exclusion from the courtroom." *Id*. at 324.

Louisiana Code of Criminal Procedure article 832(A)(2) states:

A. A defendant initially present for the commencement of trial shall not prevent the further progress of the trial, including the return of the verdict, and shall be considered to have waived his right to be present if his counsel is present or if the right to counsel has been waived and:

. . . .

(2) After being warned by the court that disruptive conduct will cause him to be removed from the courtroom, he persists in conduct which justifies his exclusion from the courtroom.

The *Cottonham* court found:

The record shows that at the start of the habitual offender hearing on November 12, 2008, Darrell Avery, the attorney appointed to represent the defendant, moved to continue the matter. As grounds for the continuance, Avery explained that the defendant believed his mother had retained another attorney, Rick Gallot, to represent him and that he did not want Avery representing him at the hearing. The trial court denied the motion to continue the hearing after learning that Mr. Gallot had been retained by the defendant's mother to do appeal work but not to represent the defendant at the habitual offender hearing. The following exchange then took place:

21

*By Mr. Cottonham*:  I fire Mr. Gallo [sic]—I fire Mr. Avery under—confidential.  He hadn't represented me right here, never came to see me, he hadn't been down there in two months.

*By the Court*:  Denied.  Denied.

*By Mr. Cottonham*:  No, I'm not going through the process when I'm telling you without my lawyer here.

*By the Court*:  I'm telling you that you either are or I find you in contempt and you can leave the Courtroom and we'll continue to go.

After being warned by the trial court that he would be held in contempt and removed from the courtroom, the defendant continued to insist that wanted to fire his attorney, that his mother had retained Gallot, and that his court-appointed counsel was not representing him to the best of his ability.  The following exchange then took place:

*By the Court*:  This hearing is going to continue today.  If the Second Circuit Court of Appeal thinks Mr. Avery is ineffective then they'll reverse it.

*By Mr. Cottonham*:  No.  I'm not going—I'm not going through it.  I have the right to get me another attorney and you have the right to appoint me a[sic] attorney.

*By the Court*:  Mr. Cottonham, you pulled this stunt on us now for about the fifth—you had one of the best attorneys.

*By Mr. Cottonham*:  You have the right to appoint—

*By the Court*:  Let me speak or I'm gonna [sic] put you in contempt and your hearing won't even go forward for sure.  You fired one of the best attorneys in this town when you fired Chris Bowman.

*By Mr. Cottonham*:  And I can fire again if I'm—if it's a conflict of interest.

*By the Court*:  No, you're not, not with this Court you don't.  You either sit down and have a hearing or you can go out—

*By Mr. Cottonham*:  I can go out—

*By the Court*:  I'll put on the record that you won't be present cause [sic] you're not cooperative.

22

It appears that the matter then proceeded without the defendant's presence in the courtroom.

The record establishes that the defendant was warned twice about his disruptive conduct before he was removed from the courtroom so that the hearing could proceed. It also appears that the defendant chose to be removed rather than remain in a hearing with Mr. Avery, the court-appointed counsel he wanted to fire. However, Mr. Avery remained present throughout the hearing and acted in his capacity as counsel for the defendant by objecting during testimony of the state's witnesses, cross-examining the witnesses, and making an oral motion for dismissal on the defendant's behalf.

Throughout the 30 months it took for the habitual offender hearing to take place, the defendant acted in ways to delay the proceedings. He initially fired his attorney rather than proceed with the hearing on February 7, 2007, and he never retained new counsel despite repeatedly telling the trial court that he would. He was afforded court-appointed counsel who represented him at the habitual offender hearing, and he offered no legitimate basis for replacing Mr. Avery. It is clear that the defendant sought to further delay the proceedings and avoid being sentenced as an habitual offender. The defendant was warned by the trial court but persisted in his disruptive behavior in an effort to yet again halt the proceedings. The defendant opted to leave the courtroom when the trial court did not give in to his baseless demands.

Under these facts, we find that the defendant's exclusion from the courtroom was justified and apparently voluntary. We find no error that would require this court to vacate the habitual offender adjudication or reverse the sentence. The assignment of error is without merit.

*Id*. at 324-25.

In *State v. Cyriak*, an unpublished appeal opinion bearing docket number 01-1669 (La.App. 3 Cir. 6/19/02), *writ denied*, 03-262 (La. 2/6/04), 865 So.2d 720, the defendant, who was not represented by counsel, had several outbursts during the habitual offender hearing and told the trial court numerous times he wanted to leave the courtroom. He was eventually removed from the courtroom, and the presentation of evidence continued. The defendant was found to be a fourth habitual offender and sentenced accordingly.

23

On appeal, this court cited La.Code Crim.P. art. 832 and noted the trial court may have erred in failing to warn the defendant that his actions could result in his removal from the courtroom. This court found such error was harmless in light of the defendant's repeated assertions that he wanted to leave. Furthermore, the defendant had been removed from prior court proceedings because of his behavior. This court held that in light of the defendant's request, a warning was not necessary. This court noted the defendant's presence at all stages of the proceedings was required and cited La.Code Crim.P. art. 835. However, there was no further discussion of the article or the defendant's absence when his sentence was pronounced.

In *State v. Perrilloux*, 99-1314, (La.App. 5 Cir. 5/17/00), 762 So.2d 198, the fifth circuit held that sentencing in absentia requires that a sentence be vacated and the matter remanded for resentencing. *See also State v. Wilson*, 46,340 (La.App. 2 Cir. 5/18/11), __ So.3d __.[2] A defendant's presence is only required when sentence is pronounced and not during the court's articulation of considerations and the factual basis for the sentence. *State v. Causey*, 450 So.2d 1071 (La.App. 1 Cir. 1984). *See also State v. Cooper*, 38,743 (La.App. 2 Cir. 9/22/04), 882 So.2d 657.

In *State v. Granger*, 08-1531 (La.App. 3 Cir. 6/3/09), 11 So.3d 695, the defendant waived his appearance at sentencing via a written waiver signed by him. This court vacated the defendant's sentence and remanded the matter for resentencing in his presence, as required by La.Code Crim.P. art. 835.

In *State v. Thomas*, 05-1051 (La.App. 3 Cir. 3/1/06), 924 So.2d 1146, *abrogated on other grounds by State v. Stevens*, 06-818 (La.App. 3 Cir. 1/31/07),

---

[2] This case can be found by using Westlaw citation 2011 WL 1880290.

24

949 So.2d 597, defense counsel waived the defendant's presence at the hearing on his motion to reconsider sentence. This court acknowledged that although a defendant's presence is not required at a hearing on a motion to reconsider sentence where the trial court simply rules on the motion, his presence is required when he is actually resentenced at the hearing on the motion. *See also State v. Bradford*, 29,654 (La.App. 2 Cir. 9/24/97), 700 So.2d 1046.

In *State v. Boudreaux*, an unpublished appeal bearing docket number 98-40 (La.App. 3 Cir. 6/3/98), the defense attorney waived the defendant's presence at a hearing held to "clarify" the sentence. At the hearing, the court imposed restitution as a condition of probation because it was not clearly imposed at the original sentencing proceeding. This court vacated that condition of probation and instructed the trial court that in the event it decided to impose restitution as a condition of probation, the defendant must be present.

In *State v. Harris*, 93-1098, 94-2243 (La. 1/5/96), 665 So.2d 1164, the supreme court noted that a ministerial correction to an illegally lenient sentence may be made in the defendant's absence. However, a district judge retains discretion to vacate the sentence originally imposed and to resentence a defendant in open court.

In *State v. McIntyre,* 567 So.2d 800, 801 (La.App. 3 Cir. 1990), this court stated:

> In *State v. Champagne*, 506 So.2d 1377 (La.App. 3 Cir.1987), this Court held that a defendant's presence is not required when the trial court merely corrected a previously imposed illegal sentence. However, this case is quite different. Defendant's conviction and sentence of possession of cocaine with intent to distribute was vacated, and the defendant was subsequently convicted and ordered sentenced on a different, lesser conviction of possession of cocaine. When a conviction and sentence are entirely vacated and remanded for entry of a guilty plea and sentencing, the defendant's presence in court for such action is clearly required by La.C.Cr.P. Art. 835. This

25

is to insure that defendant has an adequate opportunity to present evidence and to dispute the accuracy of the sentencing judge's reasons for sentencing and to insure that defendant is apprised of the charge for which punishment is imposed. See, *State v. Ford*, 422 So.2d 416 (La.1982); *State v. Monk*, 528 So.2d 173 (La.App. 5 Cir.1988), rev'd on other grounds, 532 So.2d 1143 (La.1988).

Despite the rulings in *Cyriak*, 01-1669, and *Cottonham*, 27 So.3d 320, the language of La.Code Crim.P. art. 835, which states a defendant "**shall always** be present when sentence is pronounced," requires a defendant's presence at sentencing. (emphasis added). Accordingly, while we do not condone Defendant's disrespectful behavior, we are constrained to vacate Defendant's sentence and remand the matter for resentencing in Defendant's presence.

## SUPPLEMENTAL ASSIGNMENT OF ERROR NUMBER FOUR

In his counsel-filed supplemental assignment of error number four, Defendant contends his life sentence violates his constitutional right against an excessive sentence. Defendant's sentence is vacated, and the matter remanded for resentencing. This assignment of error is moot.

## PRO SE ASSIGNMENT OF ERROR NUMBER TWO

In his second pro se assignment of error, Defendant contends defense counsel's failure to request a jury instruction on circumstantial evidence constituted ineffective assistance of counsel.

> A claim for ineffective assistance of counsel is properly raised in an application for post-conviction relief because this allows the trial court to order a full evidentiary hearing on the matter. *State v. Burkhalter*, 428 So.2d 449 (La.1983).

*State v. Christien,* 09-890, p.7 (La.App. 3 Cir. 2/3/10), 29 So.3d 696, 701.

This assignment of error cannot be sufficiently evaluated by a review of the record alone. A hearing is required.

26

# PRO SE ASSIGNMENT OF ERROR NUMBER THREE

In his third pro se assignment of error, Defendant contends the district attorney violated La.Code Evid. art. 403(3), thereby creating unfair prejudice and rendering his trial fundamentally unfair.

Defendant discusses relevant evidence, other crimes evidence, and the granting of a mistrial. The discussions pertain to the following portion of Linda Elie's testimony (emphasis added):

> Q   So you don't know if you can tell the truth, is that what you're saying?
>
> A   I can tell the truth.
>
> Q   Okay. That's all we're after today.
>
> A   Everything I've told them I swear before God.
>
> Q   **When he was seventeen you don't know he got convicted of killing a lady, eighty-six year old woman, you don't know that he was convicted of that?**

Defense counsel objected to the question, stating the following: "I'm going to object to the question, the way it was phrased. The age of this – he was convicted or not, that is the issue."

Defendant contends his prior conviction for manslaughter was admissible to prove he had a prior felony conviction, but "misstating the appellants [sic] age when he was convicted an [sic] the age and gender of the victim was not." Defendant argues his age and the age and gender of the victim do not make his being a felon in possession of a firearm more or less probable. Defendant additionally argues it is clear the State's intention was to incite emotion by reciting the victim's age. Defendant asserts the error was compounded by the trial court's failure to acknowledge defense counsel's objection and ordering the witness to answer the question.

27

[T]he erroneous admission of irrelevant evidence does not require a reversal of a conviction if the error is harmless beyond a reasonable doubt. *See State v. Wille*, 559 So.2d 1321 (La.1990), *cert. denied*, 506 U.S. 880, 113 S.Ct. 231, 121 L.Ed.2d 167 (1992), *citing Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). In *Sullivan v. Louisiana*, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993), the United States Supreme Court explained that:

> Harmless-error review looks . . . to the basis on which "the jury actually rested its verdict." *Yates v. Evatt*, 500 U.S. 391, 404, 111 S.Ct. 1884, 1893, 114 L.Ed.2d 432 (1991)(emphasis added). The inquiry, in other words, is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error.

*State v. Chesson*, 03-606, pp. 18-19 (La.App. 3 Cir. 10/1/03), 856 So.2d 166, 179-80, *writ denied*, 03-2913 (La. 2/13/04), 867 So.2d 686.

The State was entitled to introduce the fact of the prior manslaughter conviction to prove the charge of possession of a firearm by a convicted felon. However, admission of the details concerning the manslaughter conviction, if erroneously admitted, was harmless. Accordingly, this assignment of error lacks merit.

## ORDER

Defendant's convictions are affirmed. However, his habitual offender sentence is vacated, and the matter remanded for resentencing in his presence. The trial court is ordered to specify which of Defendant's two convictions is being enhanced.

**CONVICTION AFFIRMED; REMANDED FOR RESENTENCING WITH INSTRUCTIONS.**